Muhammad and an unknown occupants defendant and defendant, Mr. Francis J. Lusselowski and Mr. Robert M. Henson. Thank you, Mr. Lusselowski, on behalf of the Plaintiff Authority, you may proceed. And if it pleases the Court, what we have in this case, I think it's just a matter of statutory construction. This Court previously decided that Section 9G of the Condominium Property Act, 9G.3, states that once assessments after a purchaser from a judicial sale takes over, it confirms the extinguishment of the lien. What has come up since was after that decision, the Supreme Court in 1010 Lakeshore confirmed that interpretation and said that it's really a two-step process. You have the foreclosure case where the lien is extinguished and then the confirmation of the extinguishment is when the purchaser at the judicial sale makes a payment of the assessments following receiving title of the property. And it's on and after the first month following. Well, following what? Following, well, it's a question that right now it appears that it's actually taking title. So it's not following the confirmation. It's actually once title is given to the person. Does 9G.3 talk about after the judicial foreclosure sale? It does. Okay. Well, the judicial foreclosure sale takes place, then the confirmation takes place, then the title is issued. Correct. So you're saying the extinguishment is payment after the last event, and the statute says it's after the first event. Well, it's confusing. And that issue came up in one case, and the statute, I think, is clear that the statute says that it is on and after, actually I have it in front of me. The judicial foreclosure sale. From and after the first day of the month following the judicial foreclosure sale, delivery of deed, or entry of a common law. So it's after the sale. And I think the recognition in the one line of cases where promptness is a requirement said that because there generally is some delay between when the sale occurs and when it's confirmed, that you're not going to hold that intermediate time against the new owner of the property for not paying assessments. They're still on the hook for it. Yeah. Oh, they're actually on the hook for it. Okay. Now, that's a V&T case where they said that even applying a promptness requirement, if you start paying after the confirmation, you're on your prompt. They're on the hook for everything. They're absolutely on the hook for everything after the first of the month following the date that they put in the bid at the judicial section. And actually, they're also on the hook under another section for the six months before the original foreclosure action started. Correct. That's under section four. But that has nothing to do with extinguishment. Correct. The only extinguishment thing is paying those fees after, whether it's the foreclosure, whether it's prompt or not, but paying those fees after the judicial foreclosure sale. That's correct. Now, 1670 was paid on the day of trial, I believe, or something like that. In our case? Yeah. It was actually paid a little bit before that, and the check was held, and an order was entered allowing them to deposit the funds. Okay. And you would agree that at that point in time, your client was liable for more than 1670, correct? Correct. At that point in time, there were two issues. So at that point in time, my client chose to pay the six months so that that issue, in our view, was removed from the consideration at the trial court level. Okay. And that's pursuant to 9G4, so that any time prior to a judgment, we submitted that payment, because it was actually undisputed we owed that six months. The six months before the judicial foreclosure proceedings started. It was actually the six months before the date that the association filed a suit against the prior owner. Right. And I think that the reason the legislature did that was because that amount is kind of pure, so it generally is just assessment. It's not encumbered by attorney's fees and other kind of things that might come up in the six-month period. It's to recoup some of the association's losses. Correct. Okay. So it's clear then that that 1670 was for that six-month period. We also paid an amount that included the first assessment payment, because we did have a dispute at that time about what current assessments were to, but we wanted to make sure that that amount included at least the first payment in order to allow me to stand before you today and make the argument that the lien was established. We understand the argument. Mr. Wazowski, can you call our attention to any cases that stand for the proposition that partial payment confirms extinguishment of the lien? Well, partial payment was discussed in 5510 Sheridan. So in 5510 Sheridan, they made a partial payment. They made a bigger payment than we did, but they only made a partial payment. And at that point, it was confirmed that the lien was extinguished. So sort of my point today is the statute is what the statute is. Every case here, whether it be the 2nd Division in the 1st District or the 6th Division in the 1st District or 1010 LaSalle, the statute in 1010 LaSalle, the court has said it is clear. So I don't think we have a dispute that we have an ambiguous statute. We have a clear statute. Then the divergence comes where the 2nd Division downtown said, well, this is implicit requirement because the court said, well, it's to encourage a prompt payment. So we think promptness is implicit in the statute. My view would be if the legislature wants to have something for the legislature to address, if the statute is clear, we enforce it as it is. There's no requirement in the statute that says all of the payments need to be brought current. So it's not like we have to hit a zero point at some time. Other than 5510, are there any other cases where – because all these other cases that I looked at, the people brought it all the way up to speed when they made their payment. The only one that – 5510 is the only one I'm aware of that has – that says the partial payment. Correct. What is our standard of review when we review the propriety of the trial court's decision? Is it the manifest way to the evidence standard? In this case, I don't think so. What is it? Just because we're only dealing with the legal issue and the interpretation of the statute. The legal issue. Is it available? I think so. With the issue of promptness, that's a – that's not a – if we find that the interpretation that the payment has to be prompt, that would be a question of that, correct? The promptness would be a question of that. That is correct. And I actually view the appeal more of whether promptness is even part of the statute or not. But that question, then, we don't have a transcript of the trial, so – That's absolutely correct. That's absolutely correct. And the timing is what the timing is. So, you know, we know that from the date that my client acquired the property until we paid the $1,670, whatever it was, there was no other payment made. We couldn't say that prompt is when you get sued. No, but – however, the legislature did. So the legislature provided in Section 4 that if these outstanding assessments are paid at any time during an action to enforce the collection, purchasers shall not be obligated to pay those others. So with regard to that six-month period, the legislature allows those to be paid even while the action is pending. So that's a decision that they made. But again, they don't say partial payment. They said if those assessments are paid, meaning – I mean, arguably the intent is meaning brought up to date. Arguably, yes. I mean, it's just – you know, the Supreme Court said that the legislature was trying to ensure prompt payment of these fees. It's not in the legislation. But in a situation like this where somebody takes possession of a property, doesn't pay a dime for a long time, then all of a sudden comes in with one payment and puts it on the desk, everything is washed out from the prior owner. The agreement is extinguished. I think so. I think under the current statute, I think that's absolutely correct. What incentive would a buyer ever have to pay anything? How does that jive with the legislative intent as alluded to? If you could drag this out and definitely make a partial payment. Well, there's two ways I think that that could happen. So one is if you never take advantage of the thing in Section 4 where you pay the assessments even while the action is going to remove the prior owner's part, you could default. You get subject to all of their attorney's fees. So if you don't want to risk having the association's attorneys do it, then come and pay. You save yourself the late fees. You save yourself the trouble. I think what a lot of these people do is they come in, spend the money to fix up the place to get it occupied again so that the association is receiving current assessments. And when they sell, they pay everything current at the time of sale, including penalties, including the six months, so that the association is getting everything that the statute entitled them to. And in this case, even attorney's fees. I understand it may not be perfect, and we may live our lives differently and try and pay bills more promptly, but the statute is what the statute is. It does not contain a requirement. For instance, what if we just told everybody, hey, all you have to do is go pay the first assessment and then skip the rest of them? Does the lien then somehow reignite? No. There can't be any logical difference between making one payment and making ten payments. A payment of that first assessment confirms that the lien was extinguished. But the statute does say, you know, if they pay the proportional share from and after the first day of the month of filing the judicial foreclosure sale, such payment confirms the extinguishment of the lien. So it's not just the first day of the month payment for that month. It is if you make the assessment payment from and after the first day of the month, the lien is extinguished. Well, Justice Burke, I think that the cases that have come out afterwards, and this is even both sides of the split that they have in Chicago, they view that as the date for when the responsibility shifts to the new owner. So they're not saying that it's, you know, any kind of deadline or any kind of time frame, nor do they think that that's what the Supreme Court in 1010 Lakeshore thought. That is the date for when the new owner now becomes responsible for all the assessments. And my client is responsible for all those assessments. The question is, and in this case, it's a substantial question. Because that payment was made in a non-timely manner or because only one payment was made, does that now open the door to allow the association to collect all of the assessments that they did not get from the prior owner, and in this case, for a period of seven years? You know, at this point, the association had filed a prior case, and based on the record, that case was filed years before my client took possession of the property. And the property just sat foul because, in this case, nobody could fix up the property. My client now comes in, will refurbish the place, sell it to somebody, and now the assessments will be current. My client is responsible for all the assessments from and after the first day of the month after the foreclosure sale. My client is responsible for the six months because when we made that payment, the first month's payment was included along with the six months. I think if a change needs to come, it needs to come from the legislature. I don't think that the requirement is implicit just because the Supreme Court put in that it was to encourage prompt payment. I don't think that's a step that should be taken. No, there's the six cases. That's pretty much all there is. Thank you, Mr. Wetzel. I'd love the opportunity to address the Court again in rebuttal. I understand. Thank you, Judge. All right, Mr. Prince. Thank you, Your Honor. May it please the Court, my name is Robert Prince, and as said earlier, I was at the Hometown County Association No. 2, which is a county association here in Aurora. And, Your Honor, this case is about whether or not the trial court properly found that there's a prompt payment requirement for a purchaser at a judicial sale of a condominium unit to promptly pay assessments or to become responsible for prior owner's failure to pay. And what specifically would you say that prompt payment, what statutory provision is it derived from? Mr. Wetzelowski is telling us that it's a little unclear in the legislation. Your argument should be made to the state legislature, not to the Court. What do you say to that? Sure, Judge. 9G sets up a lean framework for a condominium association. 9G-1 basically says we have a lean. 9G-3 provides that after a foreclosure sale, the purchasers require that the first day of the first month after the sale happens, or if there's a due to foreclosure. The sale people are concerned about in this case. So the first sentence requires that after 9G-1, or 9G-3, that they're responsible from the first day of the first month. The second sentence states that they're responsible, or that the payment of those assessments that come due from and after the first day of the first month after the sale extinguishes the lean. That second sentence states that it happens only after confirmation of the sale. So essentially what happens is we have the sale date which starts the clock ticking for when assessments must start, our reliability for assessments. The second sentence says, but until we have finality of what has happened, you don't have the obligation to pay yet. Until we have finality in the order proving sale being entered, the purchasers are having the obligation to pay. That makes sense because there are things that could happen that could undo the foreclosure sale itself. So 9G-3 sets out a framework for payment of those assessments. Then three years ago, 1010 Lakeshore comes out in the Supreme Court states that we believe, that they believe that there is an implicit requirement in 9G-3 that there be prominence on the payments. The payments must be made. Paragraph 24 of that opinion literally states that the second sentence is supposed to be an incentive for prompt payment. That statement basically flushes out in the first district of the Court of Appeals where we have now five cases that go different ways. So, Your Honor, we can say that 9G-3 provides the framework and the Supreme Court stated what they believe that framework requires and some prominence on those payments. So out of the first district, we have two sets of cases. Two of those cases say payment any time is sufficient. In those cases derive themselves on the site of the case of Pembroke which came out of this court in pre-dating 1010 Lakeshore. In the Pembroke court, it analyzed a payment that was made in full but after a certain time period, whether that was sufficient. In the case, the court stated, we find for two reasons this would be sufficient. Number one, case law says otherwise and they cited the Newport case which was about tax or about a reduction period. In the second, as I said, they paid everything. They paid what they were supposed to post foreclosure. So therefore, we invalidate the lien. We believe that 1010 Lakeshore changes that analysis. It talks about an incentive for prompt payment. It talks about payment actually being made. And unfortunately, if we allow payment any time, what happens is as we're sitting here in court today arguing about whether or not a party is entitled to money, if all they had to do was ever make payment to those post foreclosure assessments at any time, Mr. Wetzelowski can hand me a check right now and invalidate any argument about our case. That the Supreme Court in 1010 Lakeshore will have wasted its time if all Deutsche Bank had to do was walk in and check for post-sale assessments. At some point, we have finality in what's responsible. And I believe and my client believes that the First District on this line of cases coming out of the Country Club Estates cases set up a good framework for that. And talking about promptness isn't a hard and fast deadline. Yes, we have a hard and fast deadline of when things become responsible, when parties become responsible for items. But we don't have a hard and fast deadline of when those payments have to come in. Because there's a multitude of things that could come up that could prevent a prompt payment by a bank or a purchaser. I should rather say purchaser because in this case, Mr. Mojave is a bank. He's a purchaser of the unit, isn't a bank who ran a broken mortgage. So in that prompt payment analysis, they talked about both prompt in time and in amount. In this case, on the day of the first trial date, when we were trying to still negotiate and see if we could resolve the case, that's when the first payment was made. Some 16 months after the foreclosure sale occurred. Would you agree that that payment was for the six months under the other statutory section and then one month post-sale? It was, Judge. That's based off of Mr. Wesolowski's representation in the court and in the brief by the appellant. That was the calculation they tried to use. It wasn't exactly right, but it was pretty close to those numbers. Do you think that the payment then at that point in time, whether we decide it's prompt or not, had to be in full? I would say at a minimum, if this court were going to say you can make the payment at any time, it has to be in full. If you allow a defendant just to make one payment, there is no incentive at all for them to pay the remaining amounts that should be due. There would be no incentive at all because all they have to do is just wait, wait, wait in hope that somehow we lose the information. 5510 should allow a prompt payment? 5510 did not have a prompt payment analysis. Instead, what they did is they ignore, I wouldn't say ignore, but they didn't discuss the prompt payment language. I'll attempt to make sure. I understand. Did it have a partial payment issue? In 5510, I believe they paid, it doesn't address the amount or whether it was paid in full, but if you do the analysis of when the share sale occurred to in the months that they said was not checked for payment, there was a two-month difference, I believe. I believe the share sale was in May of 2014, and I believe they started paying assessments from July 2014. So they missed a month or two of assessments in there. I think it was August, I apologize. So that was the two months, July and June, were not included in what they said the check was for. So that analysis out of that court didn't discuss the adequacy of the payment itself. It just said that they paid the post-recorder sale assessment. That was the same issue as V&T, whether that was prompt. V&T seemed to adopt a prompt payment requirement, but there was only a partial payment because it started after the foreclosure confirmation and not the sale. Correct, Judge. In V&T, it looks like they did involve a prompt payment analysis, and they found that when they paid two months after the confirmation, that that was sufficiently in time, which isn't a long way off of when it should have been due. They were just short for two months. They argued in court that they should have only been responsible after the sale was confirmed and the deed was issued, and they forgot the first two months. So it looks like the V&T court didn't want to, for two months of assessments, stick them for the $27,000 that was owed. But again, no partial payment analysis. There was no partial payment analysis, other than to say it was short, but we find that they're responsible only for those two extra months. And in the V&T process, what happened was a paid assessment letter situation, which meant they were trying to sell their home to a purchaser, and they paid under protest because they needed to sell the house, and they wanted to get a refund. So essentially, they got a refund of everything over those two months of assessments that they should have paid already. So those lines of cases, we believe the Country Club Estates, providing a prompt payment analysis, a fact-by-fact, case-by-case basis, puts both parties in a position to at least have an argument and an understanding of what should be paid when. And you have to remember that the purchaser is in the best position here. The purchaser, as the 1010 Lakeshore report stated, is in a position to avoid all of this by promptly paying assessments. All they have to do is pay from after the first day of the first month. And if they do that, they will never be responsible for anything above what's required in 9G4 and 9G5. So like that first month after the sale, if you make the one payment for that one month, it's extinguished. I believe if you made payment in full of what your obligations are at that time, I think it would be hard-pressed for an association to argue that it would not have been extinguished because at that point, the lien by Operational Law under 9G3 would be extinguished because they paid all that was due from and after the first day of the first month after the sale. So by statute, it would fall squarely within the second sentence of 9G3 and make it so that it would have been extinguished. The problem is when they wait 16 months, when they wait 7 months, they push the association to have to pursue collections, obtain a judgment against the purchaser for those past two months, and then try to pay one month of assessments or try to pay them all. We believe that even if they pay them all after it is deemed to be unprompt, non-prompt payment, they should be responsible for the previous owner's responsibility for failure to pay. So, judges, we believe that the Pembroke analysis out of this court was modified by 1010 to make sure that even if you looked at the Pembroke case and looked at the arguments the court uses in analyzing whether or not the association should have one case in which they lost, we believe that all prongs of that analysis point after the 1010 Linkshore case to that there should be some promptness requirements on the purchaser after the foreclosure sale. And therefore, that the court should affirm the trial court's ruling that there was a prompt payment requirement and that Mr. Muhammad failed to promptly pay assessments and therefore should be liable for the entire amount from the previous purchasers. Thank you very much. Thank you, Mr. Prince. Mr. Wasilowski, you may address the court in a moment. And just briefly, I think the argument is actually quite well defined. A question seems to be exactly what payment is required, well, to when, and it's obviously my opinion that there is no timing requirement. The legislature certainly knows how to do that and didn't, and I think that the analysis in 5510 is correct. The other is, okay, when you do make a payment, what amount is required to be paid? And I think the legislature, again, can clarify that and say, well, you have to zero your account out at some point, and that's what does it. So if you don't pay in the first month, if you pay in the second month, then you've got to pay both. Or if you don't pay until the sixth month, then you've got to pay until you get your zero balance, and then you're done. But they didn't say that. They left us in this situation that we're at that they say, look, you're responsible for them from and after, and when the payment is made or when a payment is made, the lien is extinguished. And then now we've got that finality because now you're not fighting about all of the prior owner's things. The other thing that my interpretation would do is there's no doubt that there's differences between condemning association owners and among the association with regard to the amounts of charges. And, in fact, in this case, adjustments to those charges were made by Judge Stanford. That was something that we went through the hearing, and the judge said, hey, I'm going to allow these, and when the knot goes out, there's your judgment. And that allowed us to have our hearing in court to do it because otherwise, now my client is left with the choice of whatever they hand you, you've got to pay. And now we're the ones who then have to come back and ask for the court in order to make a determination that we had overpaid, which is what happened in VT. They had a gun to their head. They paid. They asked for everything to come back, and, in fact, in that case, it turned out that the association had collected money that they put down and charged the association for. So I think that the simplest solution still is once that first payment is made, that that confirms the extinguishment of the lien. And all we're really doing here is the lien was extinguished in the foreclosure action. This is a property that had no equity, that will never have any equity. So now what we're going to do is we're going to say, hey, look, if you don't start paying them right away, the consequence for you is whatever is unpaid. And in some of these cases, it's $63,000 or more. You're going to be on the hook for all that. The legislature determined that what they thought in the balance between getting new owners in to get the condominiums backed up and generating revenue, and the associations need to have some kind of balance in their budget because they just, especially a small association, can't maybe take that big a hit. The legislature said, here's what we're going to do for that compromise, six months. Whenever somebody comes in who's not a bank, buys a property, you're responsible for six months of the prior owner's association, and that's where the balance comes in. Not this, if you pay late, you get hit with this penalty. The payment was made, the lien should be extinguished, and I think that's what the statute says. Thank you, Mr. Wesselowski. Thank you. All right. I'd like to thank both sides for the follow-up arguments here this morning. The matter will, of course, be taken under advisement, and a written decision will issue in due course.